IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**OSCAR ROBY**                                                      **PLAINTIFF**

**v.**                                                      **No. 4:24CV21-JMV**

**MDOC, ET AL.**                                        **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Oscar Roby, who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that the defendant failed to protect him from attack by another inmate. The defendant has moved [25] for summary judgment, arguing that the plaintiff did not exhaust his administrative remedies before filing suit, as required under the Prison Litigation Reform Act. The plaintiff has not responded to the motion, and the deadline to do so has expired.[2] For the reasons set forth below, the defendant's motion [25] will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

[2] The plaintiff submitted [30] medical records after the instant motion was filed, and the court has construed them as a supplement to the plaintiff's complaint.

**Factual Allegations**[3]

Oscar Roby is an inmate in the custody of the Mississippi Department of Corrections ("MDOC"). He has filed suit under 42 U.S.C. § 1983 alleging violation of the Eighth Amendment prohibition against cruel and unusual punishment. Doc. 1 At all times relevant to this suit, Roby was housed at the Mississippi State Penitentiary ("MSP"). *See* Doc. 1 at PageID #: 4.

Roby alleges that on September 20, 2023, another inmate beat him with a lock on a string, which broke his nose and jaw – and knocked out some of his teeth. Doc. 1 at PageID #: 5. Roby alleges that Officer Shorts heard another inmate threaten to attack him. Doc. 10 at PageID #: 30. Later that day, Officer Shorts was escorting Roby to see his case manager. Doc. 10 at PageID #: 30. As they passed the inmate's door, he again told Ms. Shorts that he would get Roby when they came back. Doc. 10 at PageID #: 30. Upon their return from the case manager meeting, the other inmate came out of the shower with a lock on a string and attacked Roby. Doc. 10 at PageID #: 30. Roby alleges that Officer Shorts did not prevent the assault, stating that "she never came between us, or tried to use her mace." Doc. 10 at PageID #: 30.

**Summary Judgment Standard**

The defendant seeks summary judgment in this case, arguing that the plaintiff did not exhaust his administrative remedies before filing the instant suit. Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and

---

[3] The court has drawn the facts from the defendant's motion to dismiss, as they are both well-documented and uncontested.

(c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Exhaustion of Administrative Remedies

As discussed below, the plaintiff did not exhaust his prison administrative remedies before filing the instant case, as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). Although exhaustion of administrative remedies is an affirmative defense, normally to be pled by a defendant, the court may dismiss a *pro se* prisoner case if failure to exhaust is apparent on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325 (5th Cir. 2007). Congress meant for the exhaustion requirement to be a tool to help weed out the frivolous claims from the colorable ones. *Jones v. Bock*, 549 U.S. 199, 203 (2007).

The PLRA requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "*proper* exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (emphasis added); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. MDOC has thus set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. 2000). An inmate must complete two steps to exhaust the ARP process. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The inmate may initiate the two-step ARP grievance process by submitting his allegations in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*,

No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). [4, 5] The Adjudicator initially screens the complaint and determines whether or not to accept it into the ARP process as a grievance. *Id*.

The screening phase thus operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process).

---

[4] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id*.

[5] As the plaintiff's claim arose in 2023, that year's Revised Inmate Handbook applies. Though the relevant parts of the 2023 handbook are attached to the defendant's summary judgment motion, a full copy of the 2023 Revised Inmate Handbook available at https://www.mdoc.ms.gov/sites/default/files/2023-02/MDOC-Inmate-Handbook%202023-08-Chapter-VIII.pdf. The court may take judicial notice of MDOC's Inmate Handbook. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see*, e.g., *Smith v. Polk Cnty., Fla.*, No. 8:05CV884T24MAP, 2005 WL 1309910, at *3 (M.D. Fla. May 31, 2005) (judicial notice taken of inmate handbook and grievance procedures). The grievance procedures are set forth in MDOC Standard Operating Procedure 20-08-01. A copy of S.O.P. 20-08-01, as it existed in 2023, is attached to the summary judgment motion as Exhibit "C."

However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted as a valid grievance, the complaint is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate.[6] *Id*. If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing the appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id*. The Superintendent, Warden, or Community Corrections Director will then issue a final ruling (the Second Step Response) – which completes the ARP process.[7] *Id*. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*.

### Roby Did Not Complete the Prison Grievance Process

In the present case, Oscar Roby attempted to file three grievances, all of which were defective. On September 20, 2023, he submitted his first grievance. He alleged that the security officers failed to

---

[6] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process. Instead, the ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening. Inmate Handbook, Chapter VIII, Paragraph IV(H).

[7] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id*. Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id*. If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may then seek relief in State or Federal court.

prevent the assault. *See* Exhibit "A."[8] For relief, he requested "to file a lawsuit/civil suit." *Id*. The grievance was returned by letter on September 27, 2023. *Id*. J. Morgan, an investigator with the ARP, stated in the letter that the request for relief was unclear. *Id*.

Roby then submitted second grievance dated October 10, 2023. *Id*. He alleged in that grievance that he was assaulted by an inmate who had warned him that he would be attacked when he came back from seeing the case manager. *Id*. Roby alleged that the inmate came from behind the door and attacked him with a lock in a sock, knocking his teeth out. *Id*. As relief, Roby sought medical treatment for his mouth – and the termination of Officer Shorts.

While his October 10, 2023, grievance was pending, Roby submitted a third grievance on October 19, 2023. *Id*. In the third grievance he repeated the allegations from the previous grievances, requesting that his mouth be fixed, and that Ms. Shorts be fired. *Id*. On October 25, 2023, Investigator Morgan responded with a form letter entitled "How to Enter the ARP Process," which addressed both the October grievances. *Id*. The letter explained that only one grievance will be accepted at a time – and that the ARP does not process grievances seeking discipline or termination of staff members. *Id*. Roby did not submit any other grievance after receiving the October 25, 2023, letter. Hence, as Roby's grievances were rejected, he never *began* the ARP process before filing suit on February 26, 2024, which means he never *completed* that process. He thus has not exhausted the prison grievance process before filing the instant suit. This case must therefore be dismissed without prejudice under the PLRA for failure to exhaust administrative remedies.

## Conclusion

For the reasons set forth above, the motion [25] by the defendant for summary judgment will

---

[8] The exhibits referenced in this memorandum opinion may be found attached to the defendant's Motion for Summary Judgment.

be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 17th day of October, 2025.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE